

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2008

# Sconfienza v. Verizon PA Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2498

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sconfienza v. Verizon PA Inc" (2008). *2008 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2498
_____

TERRI SCONFIENZA,

Appellant,


v.


VERIZON PENNSYLVANIA INC.
d/b/a Verizon; LESLEE SPARROW,

Appellees.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cv-00272)
District Judge: Honorable James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

Before: SCIRICA, *Chief Judge,* FUENTES and HARDIMAN , *Circuit Judges.*

(Filed: December 05,  2008)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Terri Sconfienza appeals from an order of the District Court granting summary judgment to her employer, Verizon PA Inc., on four claims: (1) interference with her FMLA rights; (2) discrimination due to the wrongful denial of her request for accommodation; (3) harassment; and (4) retaliation.[1] Our review of the District Court's grant of summary judgment is plenary. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007). We will affirm.

I.

Because we write exclusively for the parties, we will revisit the facts and procedural history only briefly. The facts, in the light most favorable to Sconfienza,[2] are as follows. Sconfienza has worked for Verizon for over 15 years, and for the last 10 years she has suffered from debilitating migraines. *Sconfienza v. Verizon PA Inc.*, 2007 Westlaw 1202967, at *1 (M.D. Pa. Apr. 23, 2007). Verizon required employees requesting FMLA leave to submit a certification to the Absence Reporting Center (ARC). *Id.* If an employee suffered from a condition that would require intermittent leave over a prolonged period of time, she was required to fill out an initial FMLA certification signed by a physician, for any subsequent absence, the employee was required only to complete a

[1] The District Court also granted summary judgment in favor of Defendant Leslee Sparrow. No appeal was taken on that judgment.

[2] In evaluating the District Court's grant of summary judgment, we "take the facts in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in [her] favor." *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001).

2

personal certification form. *Id.* Verizon monitored its employees' absences through the Regional Attendance Plan (RAP), under which "chargeable" absences counted against a worker's record and could lead to disciplinary action. "[A]bsences certified as covered by the FMLA were not considered chargeable and thus not subject to the program." *Id.* The RAP consists of five "steps" of increasingly severe discipline. *Id.*

Sconfienza filed with the ARC a pre-approved FMLA certification for intermittent leave from April 2003 to April 2004 because of migraine headaches. In 2003, she was absent 13 times, nine of which fell within this period. Because of these absences, Sconfienza was disciplined and moved to Step 1 of the RAP. At all relevant times, Sconfienza has been, and remains to this day, employed by Verizon.

## II.

Sconfienza first claims that Verizon interfered with her FMLA rights in violation of 29 U.S.C. § 2615 when she was denied leave on 13 occasions in 2003, and when her doctor was harassed by Verizon's doctor. For Sconfienza to prevail on her interference claim, she must prove that: (1) she was entitled to FMLA benefits; (2) Verizon violated § 2615 by "interfering with, restraining, or denying her exercise of FMLA rights;" and (3) she was prejudiced by the interference. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Although it is undisputed that Sconfienza had on file an approved FMLA request for intermittent leave because of her migraines, Sconfienza's brief is devoid of any claims

regarding the completion of any personal certification forms.  Instead, she claims that the forms were sent to the wrong address and that Verizon refused to resend them.  Verizon, on the other hand, claims that Sconfienza refused to change her address with the administrator after being informed that only she had the power to make an address change.  The burden was on Sconfienza to ensure that she complied with the procedures, so long as she had proper notice of the filing requirements.  *See* 29 C.F.R. §§ 825.301(b)(1)(ii),  825.305(a), (d).  Nowhere in the record does Sconfienza claim that she was unaware of this process.  Because Sconfienza never filed the appropriate personal certifications, she was not entitled to FMLA leave, and thus summary judgment was proper on the interference claim.

### III.

Sconfienza claims that Verizon failed to accommodate her disability in violation of the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA).  To establish a *prima facie* case, Sconfienza must demonstrate that she: (1) is a disabled person within the meaning of the ADA; (2) is otherwise qualified to perform the essential function of the job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision.  *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

We need not discuss the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), because we find that the District Court correctly

concluded that Sconfienza did not establish her *prima facie* case.  Sconfienza claimed to have suffered adverse employment actions when she:  (1) was moved to Step 1 of the RAP; (2) was moved to Step 2 of the RAP; and (3) had to use personal days in lieu of FMLA leave.  We disagree.

First, although Sconfienza has provided sufficient proof that she was moved to Step 1 of the RAP, Step 1 cannot be considered an adverse employment action.  To pass the summary judgment standard, the adverse employment action must be sufficiently severe and concrete to affect the "compensation, terms, conditions, or privileges" of employment.  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1298 (3d Cir. 1997).  Moreover, "[f]ormal reprimands that result in a notation in an employee's personnel file could be sufficiently concrete, but harsh words that lack real consequences are not."  *Id.* Thus, a notation in an employee's record could qualify as an "adverse action" if it affects the "compensation, terms, conditions or privileges" of employment.  *See id.*

Here, Step 1 was only a warning about future penalties, which had no adverse impact on Sconfienza's employment, did not affect her compensation, and did not impede her ability to receive a transfer or promotion.  Although the move to Step 1 initiated the progressive discipline process, Sconfienza's employment was not impacted by the formal warning and she did not receive any additional discipline after the move to Step 1.  She remains employed by Verizon in the same position and with the same opportunities and benefits as if the move to Step 1 had not occurred.  For these reasons, we find that the

5

move to Step 1 did not constitute an adverse employment action and thus summary judgment was appropriate.

Second, contrary to her allegations, we find that Sconfienza was never moved to Step 2 of the RAP. Sconfienza claims she was moved to Step 2 after being disciplined for her absences during her pre-approved FMLA leave. Verizon claims that Sconfienza was never moved to Step 2 and remained at Step 1 at all times. At Step 2, Sconfienza would have been ineligible to be transferred or to receive a promotion, and would receive a lower rating on her performance reviews.

When deciding a motion on summary judgment, "the non-moving party may not rest on the mere allegations or denials of the adverse party's pleading . . . but must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Sconfienza's sole evidence is a document signed by her union representative stating that she was moved to Step 2. Although Verizon admits that it created a document to move Sconfienza to Step 2, it claims the document was never issued. Sconfienza's supervisor stated in her deposition that she did not issue the document. Moreover, an employee discussion document described Verizon's intention to place Sconfienza on Step 2, but noted that "[e]mployee [sic] not advanced to Step 2, per Labor Relations contract. . . . Discipline will be postponed while efforts are made to ensure employee is able to receive FMLA paperwork." Additionally, the Associate Performance Appraisal Plan covering this period also shows that she was only on Step 1 of the RAP. Finally, Verizon argued

6

that if Sconfienza had been placed on Step 2 in September 2003, she would have remained on Step 2 at the end of 2003, but her year-end performance reviews placed her on Step 1.

Sconfienza claims that we should disregard her supervisor's deposition because she is an interested witness. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-51 (2000) ("When drawing all reasonable inferences in favor of the non-movant the courts must disregard evidence the jury is not required to believe, including testimony of interested witnesses." ). Even if we did so, it would not render the summary judgment improper. Sconfienza has offered no evidence to rebut Verizon's evidence that the document was prepared but never issued, or to rebut the documents showing that she was on Step 1 at all times during 2003. At most, Sconfienza's evidence shows that the document was prepared and signed by the union representative.

Finally, Sconfienza has failed to show an adverse employment action when she used her personal days instead of FMLA leave. Sconfienza claims that any vacation time she took after Verizon denied her requests for FMLA leave was related to her migraines, and thus her use of vacation days was an adverse action resulting from Verizon's denial. She does not, however, offer any records to demonstrate dates when she used the leave in question, nor has she produced any evidence that connects her use of vacation time to her migraines. Sconfienza claims that she would offer a witness at trial to testify to these matters. A motion for summary judgment, however, is decided on the evidence provided

to the court at the time the motions are filed, not on evidence that the non-moving party might produce later. *See* Fed. R. Civ. P. 56 (d) (establishing that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Because Sconfienza has offered no evidence to show the causal connection between her use of personal time and her migraines, summary judgment was proper.

IV.

Sconfienza also claims that she was harassed under the ADA and PHRA. To prevail on her ADA claim, she must show that:

> 1) [she] is a qualified individual with a disability under the ADA; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

Walton v. Mental Health Ass'n of SE Penn., 168 F.3d 661, 667 (3d Cir. 1999).

Sconfienza contends that she was harassed when her co-workers delivered a "get well" card to her house, and when Verizon's doctor called Sconfienza's doctor on multiple occasions. We find that these incidents were not "sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." *Walton*, 168 F.3d at 667.

8

First, Sconfienza argues that she was subject to a "drive-by get well" in August 2005 following her gallbladder surgery, when her supervisors left a get-well card at her front door without ringing her doorbell. We fail to see how leaving a card for an employee who recently had surgery without knocking on her door or disturbing her is sufficiently severe or pervasive to affect her employment conditions.

Second, although the calls from Verizon's doctor to Sconfienza's doctor were unprofessional, they did not harass Sconfienza. These conversations had no effect on Sconfienza's job performance, and the frustration they caused were visited upon her doctor, not her. Her sole claim is that she had to apologize to her doctor for the harassment. We find that this does not rise to a sufficient level to objectively alter the conditions of her employment. Accordingly, summary judgment was proper on Sconfienza's harassment claims.

## V.

Sconfienza also claims Verizon retaliated against her for taking FMLA leave. To prove retaliation in violation of the FMLA, Sconfienza must prove that: (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).

Again, Sconfienza has not shown that she suffered an adverse employment action sufficient to sustain her *prima facie* case. The standard for an adverse actions is tied to

9

the retaliatory conduct, not the basis for the underlying claim. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 69 (2006). The anti-retaliation provisions do not confine the actions and harms they forbid to those that are related to employment or occur at the workplace. They "cover[] those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context, this means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57.

Sconfienza claims the same evidence of adverse employment action as she did for her discrimination and harassment claims: discipline by Verizon, behavior that forced her to use vacation time, harassment of her doctor, placement on the RAP system,  and requirements that she fill out FMLA certifications for an illness she had already claimed. As discussed above, these actions, whether considered individually or collectively, are insufficient to create a triable issue.

In addition, some of these claims should not have been brought in an action for retaliation, but are more properly part of a discrimination or interference action, both of which were rejected for the aforementioned reasons. For example, the use of personal days is not a consequence of any alleged retaliatory action, but more properly part of a discrimination or interference claim. The harassment of Sconfienza's doctor does not rise to the level of retaliation because it was a request for information, and not a response to

10

the request for FMLA leave.  The requirement that she fill out new paperwork, and the denial of her claim are not retaliatory actions and are more appropriately analyzed as an interference with her FMLA rights.  For these reasons, Sconfienza's retaliation claims were properly dismissed on summary judgment.

VI.

For the foregoing reasons, we will affirm the judgment of the District Court.